Filed 5/14/21  P. v. Perry CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C090934 |
| Plaintiff and Respondent, | (Super. Ct. No. 17FE012724) |
| v. | |
| ROBERT PERRY, | |
| Defendant and Appellant. | |

A jury found defendant Robert Perry guilty of assault with a deadly weapon with a personal use of a firearm enhancement, possession of a firearm by a felon, and possession of ammunition by a felon.  In a bifurcated proceeding, the trial court found true an allegation that defendant had a prior conviction that qualified as a strike under the three strikes law.  After denying his *Romero*[1] motion to strike that prior conviction, the trial court sentenced him to an aggregate term of 26 years in state prison.

---

[1]    *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

1

On appeal, defendant's sole contention is that the trial court erred in denying his *Romero* motion. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Defendant was charged with assault with a deadly weapon (Pen. Code,[2] § 245, subd. (b)); possession of a firearm by a felon (§ 29800, subd. (a)(1)); and possession of ammunition by a felon (§ 30305, subd. (a)(1)). In association with the assault count, it was alleged that defendant personally used a firearm (§ 12022.5, subds. (a) & (d)). It was further alleged that defendant had a prior conviction for a serious felony, bringing him within the provisions of the three strikes law (§§ 667, subds. (b)-(i), 1170.12), and that the same conviction qualified defendant for a five-year enhancement under section 667, subdivision (a).

At trial A. W. testified that she and her boyfriend at the time, K. P. (the victim), stopped at a gas station on Father's Day in June 2017. The victim was intoxicated and upset that his child's mother would not allow him to see his child on Father's Day. A. W. walked to the service window to pay for the gasoline, and defendant stood behind her in line for the window. The victim yelled something from the car, walked over to where A. W. was standing, and started a conversation with defendant. The victim told defendant about not being able to see his child on Father's Day and pulled a picture of his child from his wallet to show defendant. A. W. did not remember the conversation being hostile, only that the victim was loud and "amped up." Defendant seemed irritated and increasingly tried to get the victim away from him, but the victim continued to interact with defendant. Shortly after A. W. returned to the car, she heard gunshots. She looked around the area to determine from where the gunshots came and saw a black Mustang

---

[2]    Undesignated statutory references are to this code.

2

drive away.  A. W. realized the victim had been shot and drove the victim to the hospital. She did not see the victim with a weapon or hear him make any threats.

The victim testified at trial but could not recall much about that night except that he heard gunshots and A. W. told him he had been shot.  He suffered gunshot wounds to his left side, left buttock, and right buttock.  The gas station employee testified that the victim had been preventing defendant from buying cigars at the service station window, but he did not see the victim attempt to either punch or kick defendant that night.  Near the service station window, the investigating officer found blood on the ground and four shell casings consistent with a nine-millimeter semiautomatic firearm, three Winchester brand casings, and one Sig Sauer brand casing.  Defendant and the Mustang were identified by police from the gas station's surveillance video footage.  During the execution of a search warrant at defendant's residence, police found inside a shared bedroom various pieces of mail addressed to defendant, a plastic baggie with three live rounds of nine-millimeter ammunition that were Winchester brand, and a Glock-branded pistol gun case under the bed with an additional 23 rounds of nine-millimeter ammunition.  In a trash can near the bedroom's drawer, police found a plastic gun holster for a Sig Sauer pistol.

Defendant testified in his own defense and claimed that he shot the victim in self-defense after the victim threatened him.  Defendant claimed that he showed the victim his gun, and the victim then said that defendant's gun was not the only gun ever made and started to walk back toward his car.  Defendant believed that the victim had planned to grab a gun from the car, so he fired a warning shot toward the ground that accidently hit the victim.  Defendant claimed the recoil caused him to fire an additional two shots that hit the victim on accident.  He claimed the fourth shot, which was fired while defendant stood near his vehicle, was another warning shot that accidently hit the victim.  A police detective testifying as an expert in firearms explained that in the thousands of times he had seen a firearm fired, he had never seen the recoil cause the firearm to discharge an

3

additional shot. It was his opinion that the recoil would not cause additional shots to be fired.

The jury found defendant guilty on all counts and found the firearm allegation to be true. In a bifurcated trial, the trial court found true the allegation that defendant had a prior conviction in 2010 for a serious felony, first degree residential burglary. Thereafter, defendant filed a *Romero* motion inviting the trial court to strike the prior serious felony conviction pursuant to section 1385. He argued that striking his 2010 strike prior for burglary was appropriate because the conviction occurred long ago, he had a troubled youth and upbringing, he had made serious efforts to change his life since the conviction, he committed the current offense in self-defense, and had not committed any other offenses between these convictions.

The prosecutor filed a written opposition. The prosecutor argued that defendant's motion should be denied because of his lengthy criminal history, which includes a 2006 juvenile conviction for resisting a peace officer, two separate 2008 juvenile convictions for first degree burglary and receiving stolen property in connection with another burglary, and 2010 convictions for first degree burglary and grand theft related to two separate incidents. The prosecutor further argued that the motion should be denied because the strike prior was a serious crime demonstrating defendant's escalating violent tendencies and dangerousness, defendant knowingly purchased the gun and ammunition illegally, he attempted to cover up his crime by disposing of the gun, and he expressed no remorse and took no responsibility for his conduct and claimed the victim and the gun's recoil were to blame. The prosecutor also argued that the motion should be denied because defendant's future prospects were poor in light of his extensive and continuous criminal history.

After considering both pleadings and hearing further oral arguments on the *Romero* motion, the trial court declined to strike the prior conviction after weighing the factors listed in *People v. Williams* (1998) 17 Cal.4th 148. First, the trial court

considered "the nature and circumstances" of defendant's present felony, noting that the current offense involved violence: "I have noted the Williams factors in [defendant's] situation, the first of which is the severity of the current offense, and the current offense does involve violence, and an actual injury inflicted on an individual, and use of a firearm. I will find those are factors that do not mit -- militate towards the Court dismissing that prior." Second, the court stated: "I'm also considering the facts and circumstances of the prior itself. And I note that although [defendant] was a juvenile, the Court had discretion at that time to sentence him to probation and instead sentenced him to prison, albeit the low term, and I couldn't figure out where the 32 months came from, but then I see that there was a separate, uhm, [section] 487." The court observed: "[T]he [section] 487 apparently is a lesser-included to Count Two of that docket, which was a [section] 459 on a separate date, and what I'm noting particularly is that it is a separate date. [¶] I'm noting as well the receipt of stolen property that was the subject of the conviction in October of 2008 and the facts and circumstances of that offense. [¶] So although it had been quite a while since [defendant's] convictions and his crimes in those offenses, those crimes are significant. And while -- I'm gonna -- I find that that's a fairly neutral factor in [defendant's] Williams factors."

The court continued: "In terms of his character and his prospects, I have considered that he is or was at the time of this offense a new father and that he had been working, that he had been crime free since his last crimes. But I also note that at the time of this offense he was carrying a firearm, loaded, for -- well, as he said, for his own protection. But given the way that he used it is a somewhat unprovoked way in this case, it appears to me that that is for something more than protection but, in fact, is at least contemplated for offensive use. [¶] So in terms of his character and his prospects, even after [defendant's] prior criminal convictions he was violating the law by carrying that firearm, particularly, he testified in the trial, earlier in the day when he's -- when he's taking around his -- his infant son, putting both of them at risk of danger to say nothing of

5

the rest of the community." The court concluded, based on its weighing of the *Williams* factors: "On the balance of all those factors, I will find that the interests of justice do not warrant that that strike be struck. I understand the Court does have jurisdiction to strike that and also to strike the 667, sub (a) prior, or to strike or stay the punishment for either of those, but I will exercise my discretion and decline to do either."

After denying the *Romero* motion, the trial court sentenced defendant to an aggregate term of 26 years in state prison. This timely appeal followed.

DISCUSSION

Defendant contends the trial court erred in denying his *Romero* motion. We disagree.

Section 1385, subdivision (a), gives the trial court authority, on its own motion or upon application of the prosecution, "and in furtherance of justice," to order an action dismissed. In *Romero*, our Supreme Court held that a trial court may utilize section 1385 to strike or dismiss a prior strike for purposes of sentencing under the three strikes law. (*People v. Superior Court (Romero)*, *supra*, 13 Cal.4th at p. 504.) A trial court's ruling denying a request to dismiss a prior strike allegation "is subject to review under the deferential abuse of discretion standard." (*People v. Carmony* (2004) 33 Cal.4th 367, 374.)

"In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, ' "[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' [Citations.] Second, a ' "decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' [Citations.] Taken together, these precepts establish that a trial court does not abuse its

6

discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony*, *supra*, 33 Cal.4th at pp. 376-377.)

In *Carmony*, our Supreme Court explained: " '[T]he Three Strikes law does not offer a discretionary sentencing choice, as do other sentencing laws, but establishes a sentencing requirement to be applied in every case where the defendant has at least one qualifying strike, unless the sentencing court "conclud[es] that an exception to the scheme should be made because, for articulable reasons which can withstand scrutiny for abuse, this defendant should be treated as though he actually fell outside the Three Strikes scheme." ' " (*People v. Carmony*, *supra*, 33 Cal.4th at p. 377.) The circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be extraordinary. (*Id.* at p. 378.) Reversal is justified where the trial court was unaware of its discretion to dismiss a prior strike or considered impermissible factors in declining to dismiss. (*Ibid.*) But where the trial court, aware of its discretion, " 'balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance.' " (*Ibid.*)

In deciding whether to dismiss a prior strike allegation, a trial court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams*, *supra*, 17 Cal.4th at p. 161.)

We find no abuse of discretion here. In ruling on defendant's motion, the trial court was aware of its discretion, carefully listed and considered the relevant factors under *Williams*, and reached its decision in conformity with the spirit of the three strikes law. Unlike other cases in which courts have found an exception to the three strikes scheme (see *People v. Garcia* (1999) 20 Cal.4th 490, 503), defendant's crimes were not

7

related to drug addiction, both the past and present crimes involved violence, and his criminal history did not arise from a single period of aberrant behavior. Further, while defendant contends he has lived a relatively crime-free life since his prior conviction, the court appropriately observed defendant admitted he had been illegally carrying a loaded firearm on the day he shot the victim. The court's decision was neither irrational nor arbitrary. Accordingly, we affirm. (Cf. *People v. Carmony*, *supra*, 33 Cal.4th at pp. 377-378.)

DISPOSITION

The judgment is affirmed.


/s/_____
Robie, Acting P. J.


We concur:


/s/_____
Hoch, J.


/s/_____
Renner, J.

8